```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :      No: 3:22 CR 339
                            :
                            :
VS.                         :
                            :
MATHEW ROBINSON             :
                            :      (Electronically Filed)
```

## SENTENCING MEMORANDUM

### I. INTRODUCTION

Matthew Robinson is a 31 year old man. He comes before the court with no criminal history. He was born in New Jersey but raised in Schuylkill county. He has a deformed under developed right arm, and a slight curve in his left arm as a result of a birth defect. He was born with Holt – Oram syndrome, which causes abnormally developed bones in the upper limbs. Holt – Oram can cause serious cardiac issues later in life. Mathew was also born with only one kidney.

He reported that his childhood was very sheltered due to his disability. He was restricted in his ability to socialize with his peers until he became a teenager.

1

As a child he suffered from harassment and bullying due to his disability. At home, his father was physically and verbally abusive. He did not get along well with his siblings who abused drugs and alcohol.

When he was 17 his parents separated. His father took him to North Carolina without his mothers permission. He moved back to Pennsylvania as soon as he could at age 22. He lived with his girlfriend open till the timer is a rest. She has not spoke with him since.

His mother stated in the PSR interview that Mathew is insecure and had to be in a relationship all the time. He bounced from relationship to relationship. (PSR at paragraph 43). He has four children from four different relationships. They are age 9, six, five and three.

In addition to his physical ailments, he suffers from mental health issues as well. He has been diagnosed with bipolar disorder and has required psychiatric hospitalization in the past. However, he has embraced treatment. He participates in counseling

at the Lackawanna county prison and is prescribed medication.  Through counseling he has learned to cope with his mental health.  His sister told the PSR interviewer that "his age doesn't match his mental stability".  His Mother noted that Mathew "was always in a pretend world".

He has also suffered from drug addiction from a young age. He began drinking and smoking marijuana daily at age 16. By age 18, he began using methamphetamine, ecstasy, synthetic marijuana, and molly. He continued to use elicit drugs until his incarceration and admits that his addiction play a part in this offense. he realized in the time leading up to the offense that he was having periods of time where his judgment was seriously impaired by drug and alcohol abuse.

Mathew is a high school graduate. He also attended some classes at community college but his performance was poor and he chose to withdraw. He has worked throughout adulthood at various jobs. He acknowledges

that drugs and alcohol limited his ability to hold a job long-term or excel at any given career choice. He has never completed a drug and alcohol treatment course prior to his incarceration.

**II. ARGUMENT**

A full guideline range sentence of imprisonment is not warranted in this case to afford adequate deterrence.

The Court is tasked with fashioning a sentence that is "sufficient but no more than necessary, "to comply with the purposes set forth in 18 U.S.C. 3553(a)". It is respectfully suggested that such a sentence is significantly less than the range of 120 months required by the mandatory minimum in this case. Morevoer, it is suggested that even the guideline range of 70-87 months is more than is necessary in this particular case.

First, the offense conduct of this case does not warrant a full guideline range sentence.  Mathew

Robinson's crime was limited to the context of an illicit conversation that he had with a single "victim", a Department of Homeland Security Agent who posed as an underage agent. His actions were perpetrated through the bottleneck of the internet. No physical contact existed between the parties. No physical violence or threats were made. The underlying encounter did not start with Robinson looking for or pursuing contact with an underage individual. The Agent was listed on a dating site as an 18 year old female named Riley (See PSR paragraph 5). There was no physical contact between the Agent and Robinson. He never showed up to meet the Agent at the proposed meet up location. (See PSR Paragraph 18). Robinson blocked the Agent and stopped communications. He has expressed remorse for his conduct. He discontinued contact prior to his arrest. He has accepted responsibility for what he has done and wishes to put this behind him.

Based on the facts of the offense conduct, a full guideline range sentence would fail to implement the statutory objectives of the Federal Sentencing Guidelines.

Second, the guidelines for this offense are not calculated to fulfill the 3553(a) factors in this case. There exists no link between the arbitrary 10-year mandatory minimum established by Congress and the risk of recidivism by Robinson or other 3553(a) factors.

A full guideline range sentence would fail to implement the statutory objectives of the Federal Sentencing Guidelines.  The guideline range presented to the Court is unreliable in this matter, because they were established pursuant to Congressional directives rather than by operation of empirical data promulgated through the Sentencing Commission's unique area of expertise.  The Court should therefore afford them less deference than it would empirically-grounded Guidelines.

District courts have always been instructed that they must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" **U.S. v. Kimbrough**, 552 U.S. at 101 (quoting **U.S. v. Booker**, 543 U.S. at 245-246). **Kimbrough**, **Booker** and others have been collectively construed to "mean that the district court is to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." **Kimbrough**, at 113 (Scalia, J., concurring).

In imposing a sentence, the district court cannot rely upon the guidelines alone and must also consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a). **Nelson v. United States**, 555 U.S. 350 (2009), (stating that "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the

7

former with reference to the latter"). The Guidelines remain "the starting point and the initial benchmark" in determining a sentence, they are not the only consideration. **U.S.v Gall**, 552 U.S. 49.

The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." Id. at 50; ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.") (emphasis in original). The Supreme Court rejects the notion that "'extraordinary' circumstances are required to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Id. at 49.

The practice of sentencing based upon reliance in the mathematical calculation of the sentencing guidelines alone, becomes more problematic when

mandatory minimum sentences are involved, such as in this case. When Guidelines are not based on empirical evidence, they are a less reliable appraisal of a fair sentence. In these types of cases, Courts must much more carefully exercise a 3553 analysis instead of relying on the guideline calculation to affix a just sentence.  This is because the guidelines are simply less reliable in producing a fair sentence in line with the aims of 3553(a) when mandatories are involved in the calculation.

When operating within its characteristic institutional role, which is "to formulate and constantly refine national sentencing standards," the Sentencing Commission has a capacity that courts can use in order to base determinations on empirical data and national experience, guided by professional staff with appropriate expertise. **Kimbrough**, at 109. For the most part, in formulating the Guidelines, the Commission developed and used data on past practices and recidivism. ***See United States Sentencing***

Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 72-73 (November 2004), accessed at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; **Kimbroug**h, at 96; **Gall**, 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentences.

Based on sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. (Fifteen-Year Assessment at 14). Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. See **Kimbrough** at 109.

In cases with mandatory minimums the Guidelines are not the result of the Commission's exercise of its characteristic institutional role. They are not based on any identified empirical approach but are instead

10

keyed to or guided by statutory directives. The numbers are not a representation of the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Id. (quoting **Rita**, 551 U.S. at 350); see also *Gall*, at 46 n.2. (Noting that not all Guidelines are tied to empirical evidence). Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence. See **Kimbrough**, 552 U.S. at 109-110.

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission did not employ its characteristic empirical approach when setting the Guidelines ranges for certain crimes. Fifteen-Year Assessment at 15, 72-73; **Kimbrough**, 552 U.S. at 96. Instead, the Commission attempted "to accommodate and, to the extent possible, rationalize mandatory minimum provisions established by Congress by anchoring the Guidelines to the mandatory minimum

sentences. *See* **United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 17 n.58 (August 1991), accessed at www.ussc.gov/reports.htm ("Mand. Min. Rep't").**

In sentencing guideline calculations for offenses carrying mandatory minimum provisions, unlike other sentence guidelines for offenses without applicable mandatories, individualizing factors that might bear on a case are irrelevant as far as the statute is concerned. Thus, for example, whether the defendant was a peripheral participant or a drug ring's kingpin, whether the defendant used a weapon, whether the defendant accepted responsibility or, on the other hand, obstructed justice, have no bearing on the mandatory minimum to which each defendant is exposed. (Mand. Min. Rep't at 26). The Commission's adoption of mandatory offenses has "had the effect of increasing prison terms far above what had been typical in past practice, an in many cases above the level required by

the literal terms of the mandatory minimum statutes." (Fifteen Year Rep't at 50).

In this particular case, the Defendant has certain qualities which suggest that his recidivism rate may be lower than that of the average defendant under the guidelines. The United States Sentencing Commission has found that Criminal History Category I Offenders have a substantially lower risk of recidivating. As a "first offender", an individual is the least likely category of offender to recidivate. Sentencing Guideline Research demonstrates that offenders of this category have at worst a 1 out of 10 chance of recidivating. See ***Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines*, at 6 (2004).** **www.ussc.gov/publicat/Recidivism General.pdf** In this case, the Defendant has a prior criminal history category of zero. This would suggest that his risk of recidivism is lower than that of the average offender being sentenced under this guideline provision.

Moreover, his personal history of mental health issues as well as being impaired by substance abuse at the time of the offense indicate an ability to rehabilitate and thus a lesser risk of recidivism.

**IV. CONCLUSION**

In conclusion, it is most respectfully suggested that the Defendant is an individual who possesses certain mitigating qualities that suggest his ability to be rehabilitated. His offense conduct is less culpable than other offenders convicted of this type of offense. He has accepted responsibility for his actions. These circumstances in light of a sentencing guideline range keyed off of a mandatory minimum rather than empirical evidence call for a mitigated sentence. For these collective reasons it is respectfully requested that the Court vary downward from the guidelines and impose no further sentence than necessary.

                                      Respectfully Submitted,

                                      /s/ Joseph G. McGraw
                                      Joseph G. McGraw, Esquire
                                      ID# 202942
                                      Anthracite Building
                                      41 N Main St., 4th Floor
                                      Carbondale, PA 18407

## CERTIFICATE OF SERVICE

I, Joseph G. McGraw, do hereby certify that I electronically served, via e-mail, a copy of the foregoing Sentencing Memorandum to the following:

**Phillip J. Caraballo, Esquire**

**United States Attorney's Office**

 

/s/ Joseph G. McGraw
Joseph G. McGraw, Esq.

Dated: January 17, 2024